## Chase *vs.* The Hamilton Mutual Insurance Company of Salem, Mass.

A fire insurance company located in another state, by a written instrument constituted and appointed A. its agent at Lockport, for the term of two years, "with authority to act in the capacity of an insurance broker, for the purpose of receiving applications for insurance and transmitting them to the home office, and otherwise aiding in the negotiation of fire insurance and in the transaction of business pertaining thereto." *Held,* that the agent had no authority to bind the company to issue a policy.

An application was made by the plaintiff to A., the agent of an insurance company, for insurance, which, on being forwarded to the company by A. was rejected, on the ground that the risk must go into another company (the Manufacturer's) at 2¼ per cent. And A. was requested by the company, if the plaintiff desired it, to return the application upon one of the Manufacturer's blanks. A., after communicating with the plaintiff, sent forward another similar application, and requested that a policy should be sent, at as low a rate as possible, and suggested that perhaps the plaintiff would pay 2 per cent. The agent sent, at the same time, an application from another person, for insurance to the amount of $200. The president of the insurance company replied, "I shall fix the rate of the two risks to day received, one of $1500 and one of $200, at two per cent, $34." This proposition was communicated, by A., to the plaintiff, who at once accepted it, and paid to A. the amount necessary, in addition to what had been previously sent, to make up the sum of $30, and took a receipt from A. for the amount, which stated it to be the balance of $30 premium for an insurance of $1500 on his dwelling insured in the H. Ins. Co.

*Held,* that the contract was fully completed between the parties when the plaintiff accepted the company's terms and paid the premium to A.; and that the company was bound to issue a policy to the plaintiff, and was liable for a loss which had occurred, to an amount not exceeding $1500.

*Held also,* that no time being fixed by the company within which the proposition was to be accepted and the money sent, the law would fix a reasonable time. And that accepting the proposition and paying the premium by the plaintiff to the agent, the next day after being notified of the offer, was within a reasonable time.

*Held further,* that if the money was paid to the agent before the loss occurred, it was sufficient, although it was not forwarded to the company, by the agent, until after that event happened.

In the letter of the president of the insurance company to A., fixing the rate of premium to be charged, he called the attention of A. to his accounts, and asked him to make some arrangement to meet the amount due for premiums, before they should write any more policies for him, "or that the money should accompany the new policies." He added, "The amount due on these would be $30.60. If that be sent, we will forward policies." The latter part of this letter was not communicated to the plaintiff, by A. *Held,* that this was not a *condition* annexed to the liability of the company, requiring that the money

should be actually in the company's hands before the contract should be binding.

The by-laws of an insurance company provided that any policy issued by it should be void unless the true title and interest of the assured was expressed in the proposal or application for insurance, and unless all incumbrances, and the amount and nature thereof, were therein disclosed. The plaintiff, having previously entered upon land by virtue of a contract for the purchase thereof, and having erected a dwelling house thereon, and paid all the purchase money, so as to entitle him to a deed of the premises, applied for insurance upon the house, describing it as his stone dwelling house, and as belonging to him; *Held,* that this was not a false warranty or representation of the plaintiff's title to the property insured, within the meaning of the by-law, or in any sense; the plaintiff being in fact the owner of the property, and entitled to the legal title.

Where an application for insurance described the property merely as a stone dwelling house, and it appeared from the notice of loss that it was in fact a three story dwelling house, 28 by 34 feet, *with a one story wood kitchen part attached thereto,* 12 *by* 14 *feet,* but there was nothing to show whether the kitchen part was a mere temporary structure, or how it was constructed and attached; *Held,* that upon the evidence, the court could not say that the referee was bound to find a false representation or description of the property insured.

Where the by-laws of an insurance company declare that unless the applicant for insurance shall make a true representation of the property on which he requests insurance, "*so far as concerns the risk and value thereof,*" the policy issued thereon shall be void," it is only those representations which concern the *risk* and value of the property that are material. Hence, the question arising upon all omissions to make true representations of the property become questions of fact, whether the risk was increased, or the value overstated.

APPEAL from a judgment rendered upon the report and decision of a referee. The action was upon a contract to insure against loss by fire. The referee stated in his report the facts found by him. The case also contained a statement of the evidence and exceptions. The facts appearing and the questions raised, are sufficiently stated in the opinion of the court.

*S. Caverno,* for the plaintiff.

*Olin & Geer,* for the defendant.

*By the Court,* MARVIN, J. The defendant is a mutual insurance company, under the laws of Massachusetts, having its

office in that state. The plaintiff resided at Lockport, in this state, and the transactions, resulting as he claims in a contract to insure, were had between him and one Israel G. Atwood, of Lockport, and between Atwood and the defendant. In February, 1854, the defendant, in writing, constituted and appointed Atwood its agent for the term of two years, "with authority to act in the capacity of an insurance broker, for the purpose of receiving applications for insurance, and transmitting them to the home office, and otherwise aiding in the negotiation of fire insurance and in the transaction of business pertaining thereto." It was declared that the commission should not be held or construed to confer a general agency, but only such limited and special power as should be necessary for the transaction of brokerage business; that the agent should not possess the power to bind the company by his own acts or representations, in any case, or to do any thing unauthorized by the by-laws of said company, or for which instructions and directions had not been communicated to him by the officers of the company. In September, 1854, the plaintiff made a written application and delivered it to Atwood, for insurance against loss or damage by fire, for the term of three years, in the sum of $1500, "on his stone dwelling house" in Lockport. In this application the question, "Whose is the property to be insured and where situated?" was answered, "applicant's." The property was surveyed by Atwood, and the printed application was filled out by him. The defendant, at the time it appointed Atwood an agent, in writing, delivered to him printed blanks, signed by the president and secretary, for short or temporary insurance of the applicant's property, pending the negotiation for a policy, and which was limited to ten days. The plaintiff, upon delivering the application to Atwood, paid him for premium $11.25, and Atwood filled up a blank for an insurance for ten days and delivered it to the plaintiff. Atwood then forwarded to the defendant the application for insurance, and the premium for a policy. The defendant declined taking the risk, and returned the application, but retained the premium sent, and credited it to Atwood's

account, Atwood being indebted to it on account of previous transactions. The president of the defendant wrote Atwood that he returned the risk; that it must go into the Manufacturer's company at $2\frac{1}{4}$ per cent per annum. That if the plaintiff desired a policy at that rate Atwood was desired to return the application, on one of the company's Manufacturer's blanks. He stated that he gave Atwood credit on account for the money received. Atwood informed the plaintiff of the return and rejection of his application and the reasons therefor, and told him he thought there was a mistake about it; that he would make out another application. The plaintiff then signed a blank application dated October 18, and Atwood filled it up from the previous application, and October 23 forwarded this application to the defendant, writing an explanatory letter. He at the same time changed the dates, in the short policy of insurance, so as to insure the plaintiff for ten days, commencing October 23, at 12 M. In his letter to the defendant, Atwood stated that he did not know what per cent the plaintiff would pay; may be 2 per cent, not more; that he had told the plaintiff that he would send the application, and that the company would take it as low as safety would warrant. On the application he wrote a note principally explanatory, and concluding, "send a policy at as low a rate as you can." The president replied, October 26, 1854, saying that he fixed the rates of the two risks (another application for another person had been sent by Atwood at the same time) that day received, one of $1500 and one of $200, at 2 per cent, $34. He then called Atwood's attention to the state of his accounts, and says, "We are compelled to ask you to make arrangements to remit the amount due from you for premiums, before we write more policies for you, or that the money shall accompany the new policies. The amount due on these would be $30.60. If that be sent, we will forward policies." (It should have been previously stated that Atwood, in the fall of 1853, prior to his written commission or appointment as agent, had, in pursuance of a previous conversation with the president, received applications for insurance and premiums, and had forwarded the applications for approval. That the defend-

ant had opened an account with him, charging him the pre-miums on the policies and crediting the moneys he forwarded. This account was in arrear.)

Atwood received the letter of the president, of the 26th October, on the 31st, and showed to the plaintiff that part of it, fixing the premium at 2 per cent. November 1, the plaintiff paid to Atwood $18.75, making with the $11.25 previously paid, the sum of $30 for the premium, at two per cent, on the $1500; and Atwood gave him a receipt stating that he had received $18.75, the balance of $30 premiums for an insurance of $1500 on his Niagara street dwelling, insured in Hamilton Insurance Co. This was signed by Atwood, agent. The house was destroyed by fire on the night of November 2, without the fault of the plaintiff. November 4, Atwood forwarded to the defendant, by mail, $30.54, " to pay premium on Messrs. Wilcox & Chase, (plaintiffs,) insurance as per letter of acceptance this day re-ceived." This letter bore date November 1, 1854. The president replied November 6, 1854, " Your letter bearing date November 1, 1854, but mailed subsequently, came to hand to day. I hasten to reply that the directors decline writing a policy on either of the risks named, Wm. W. Wilcox and Samuel L. Chase. You will also suspend all business for this company until your accounts are settled," &c. " The amount, $30.54, received from you, I will, with your consent, place to your credit on account. Please write me whether to do so or not." Previous to writing this letter the president had learned, from the papers, of the fire in Lockport, but had not learned that the plaintiff's house had been destroyed.

The referee found, as the law of the case, that the defendant did, on the first day of November, 1854, agree with the plaintiff to insure him against loss and damage by fire to his dwelling house, and that the plaintiff was entitled to have from the defendant its usual policy of insurance in such cases, &c., and gave judgment for the plaintiff.

Probably the most important question in this case is, was there a contract between the parties at the time of the loss, binding the defendant to indemnify the plaintiff to the extent of

$1500 for such loss, or to issue a policy to the plaintiff which would so bind it. The short, or ten days' policy, had expired a few hours before the loss, and that may therefore be excluded from consideration, except as it may be important in the history of the negotiations, in ascertaining in what such negotiations resulted. It is also clear, I think, that the written commission of Atwood, or his powers as agent, did not authorize him to bind the company to issue a policy. We are then to consider the facts, and ascertain whether there was an agreement between the plaintiff and defendant, by which the defendant was bound to issue the policy. After a careful consideration of the facts found by the referee, supported as they are by the evidence, I have come to the conclusion that they sustain the decision of the referee. That he was authorized to find, from the evidence, a contract binding the defendant to issue a policy to the plaintiff. It will not be necessary here to recapitulate the facts, but I shall refer again to the facts upon which I think the referee was justified in deciding that a contract was actually made. When the first application was received by the defendant it was rejected, and the reason assigned, viz. that the risk must go into the Manufacturer's company, at $2\frac{1}{4}$ per cent, and Atwood is requested, if the plaintiff desires, to return the application upon one of the Manufacturer's blanks. Atwood thinking there was some misapprehension, and after communicating with the plaintiff, sent forward another similar application and wrote explanatory, and requested that a policy should be sent at as low a rate as the defendant could. He stated that he did not know what per cent the plaintiff would pay, but suggested that he might pay two per cent. He informed the defendant that he had told the plaintiff the defendant would take the risk as low as safety would warrant. The president replied, "I shall fix the rate of the two (Atwood had sent another application) risks to day received, one of $1500 and one of $200, at two per cent, $34." This is clear and definite. It was a proposition, after considerable negotiation, upon the only question about which the parties had differed. This proposition was communicated to the plaintiff, and he at once accepted it and

paid to Atwood all the money required, to wit, $18.75, making $30 with the amount previously paid. No question is made as to Atwood's authority to receive the money. In my opinion, the contract was fully completed between the parties when the plaintiff accepted the defendant's terms and paid the premium to Atwood, unless the proposal of the defendant was conditional, and the condition was not performed. It is claimed that the proposition was coupled with a condition that was not performed. In the letter of the president, of the 26th October, Atwood's attention is called to his accounts, and the president asks him to make some arrangement to meet the amount due for premiums before they should write any more policies for him, "or that the money should accompany the new policies." He adds, "The amount due on these would be $30.60. If that be sent, we will forward policies." No part of this letter came to the knowledge of the plaintiff, except the first sentence relating to the rate of insurance. The plaintiff regarded Atwood as the agent of the defendant, for the purpose, at any rate, of receiving and communicating the propositions of the defendant, and receiving and transmitting the premiums. But it is not perhaps very material how this may be viewed. If we regard the letter as fixing the rate at two per cent, and a promise to forward the policy if that sum was sent, there was a compliance with the condition. The plaintiff paid the balance of the money to Atwood October 31, and Atwood, November 4, in a letter dated November 1, mailed the money, $30.54, to the defendant. This was designed to include the premium on the $200 Wilcox risk. The president in his letter says, the amount will be $30.60, and from his answer to Atwood, November 6, he acknowledged that he had received $30.54. Here is a discrepancy of six cents: no point is made of this. The refusal to issue or write a policy, is not put upon this ground. The ground taken by counsel is, that by the letter of October 26, the defendant refused or protested that it would not be bound after the expiration of the short policy, till the premium was in its hands ; that as the short policy had expired when the fire happened, and as the premium had not then been received, the plaintiff had no

contract to stand upon. I do not so understand the matter. The learned counsel excepts from this position the words, "insured in the Hamilton Insurance Co.," as used by Atwood, in the receipt given by him to the defendant for the balance of the $30, dated October 31, before the short policy expired, and argues that Atwood had no authority to make a contract of insurance binding upon the company. I lay no stress upon this language in the receipt, or the receipt itself, except as evidence that the plaintiff paid the money. But let us return to the letter of the 26th October. I repeat, that I do not understand that it contains any refusal or protest not to be bound until the premium was actually received by the company. The parties were negotiating for a policy. It does not now appear that the defendants knew that the short policy had been issued; that it was in existence, and would expire at noon on the 2d day of November. The defendants make a proposition, and say if the money is sent, we will forward policies. They fix no time within which the money shall be sent. They make no reference to the short policy. The plaintiff intended to keep himself insured, accepted the offer, and paid the premium two days before the short policy expired and immediately upon being informed of the proposal. He knew nothing of the condition, as it is called, in the letter of the president, and I very much doubt whether he could be affected by the omission of Atwood to send the money. But as no time was fixed within which the proposition was to be accepted and the money sent, the law fixes a reasonable time, and I think that the referee was justified in finding that the money was sent in a reasonable time. It is true, the money was not sent until after the fire. It was paid before the fire. I concede, had the fire occurred before the proposition was accepted by the plaintiff, he could not have accepted it and paid over the money. There was undoubtedly an implied condition in the proposal, that the property should be in being at the time the offer should be accepted. He however accepted before his short policy expired, and did all that he was bound to do.

The defendants say, if the money is sent, we will forward the policies. The money was sent in a reasonable time, and the de-

fendants received it. Suppose there had been no short policy, and the fire had occurred the next night after the proposal of the defendant was accepted and the money paid to Atwood, and before Atwood had mailed it, would not the defendants have been bound, upon receiving the money, to write a policy? In *Perkins* v. *Washington Ins. Co.* (4 *Cowen*, 645,) the premium was to be received, at the office in New York, before the company was bound to issue a policy. The agent in Savannah, Ga. received the premium and gave a receipt. Six days afterwards the goods were destroyed by fire. The agent had not transmitted the money. After the loss the money was tendered at the office in New York, and the company refused to receive it or issue a policy. A bill was filed in chancery, and the court for the correction of errors held that the company was liable.

Without remarking upon the fact that the defendant retained the money of the plaintiff, in my opinion the defendant was bound to issue a policy to the plaintiff, and it is liable for the loss, not exceeding the $1500.

The contract was for a policy for three years, as the application was to be insured for that time. The policy was to be in the form and upon the conditions used by the defendant. If the plaintiff has done any thing, or omitted to do any thing, which, had the policy been issued, would have enabled the defendant to avoid it, I have no doubt such defense may be interposed to this action. We must assume that the plaintiff understood the terms and conditions of the policy, for which he negotiated and bargained.

It is objected that the plaintiff cannot recover, because he made a false warranty of his title in the property to be insured. The plaintiff was, and had been, in possession of the insured premises for several years. He entered under a contract to purchase the land, and erected the house. He did not make the payments strictly according to the agreement for the purchase. The agreement was made in May, 1850, and the consideration money, $200, was to be paid in one and two years, with interest. The contract contained a provision that in case the vendee should make default in performing according to his

covenants, then, after the default, the contract should be void and of no effect. The vendor, in December, 1851, extended the time of payment to July, 1852. He died in December, 1852. An administrator was appointed, and in December, 1852, the plaintiff paid a part of the consideration to the administrator, and by the 1st of September, 1853, he had paid all the consideration. At the time the application for insurance was made, the plaintiff had paid all the purchase money, and was entitled to a conveyance in fee. He had, soon after the contract of purchase, erected the dwelling house. In the application for insurance he represented the property to be insured as " his stone dwelling house." To the question, " Whose is the property to be insured?" he answered, the "applicant's." The by-laws of the defendant provided that " any policy issued by this company shall be void, unless the true title and interest of the assured be expressed in the proposal or application for insurance, and unless all incumbrances and the amount and nature thereof be therein disclosed."

Under these circumstances, it is insisted that the representation as to the title to the property was false. In my opinion this objection is not well taken. The plaintiff was the owner of the house and the premises. True, he had not the legal title, but he was entitled to it. He was not a purchaser in possession, bound to pay the purchase money before he could demand a conveyance. He had paid the entire consideration for the purchase and was in possession, and could maintain that possession, even against those in whom the technical legal title was vested. Especially is this so since our code authorizing a defendant to avail himself of any defense, legal or equitable, or both, ( *Code,* § 150,) and the court to grant the defendant affirmative relief to which he may be entitled. (§ 274.) Had the heirs of the vendor instituted an action of ejectment against the plaintiff, he could have stated in his answer the facts and maintained his possession, and have obtained a judgment that the legal title be conveyed to him. In my opinion the representation in the application touching the title was not a false warranty of title, within the meaning of the by-laws, nor in any

sense. The plaintiff was the owner of the dwelling house and land.

It is also insisted that the plaintiff made a false warranty touching the position and condition of the house. In answer to the printed interrogatories, the plaintiff substantially represented that the building was a stone building, roof of wood. As to the dimensions of the building, he answered 26 by 33 feet, two stories and an attic. He answered the question touching the distances and direction of adjacent buildings, &c. In answer to the last question, "Are there any other material circumstances?" he answers " No." It is claimed that there was a wooden structure connected with the house, which was not described. The only evidence which I find in the case touching any such structure, is in the notice given by the plaintiff to the defendant of the loss, dated November 10, 1854. The property insured is mentioned as the stone dwelling house, to wit, said house was a three story stone dwelling house, 28 by 34 feet, *with a one story wood kitchen part attached thereto*, 12 *by* 14 *feet*. Nothing is said, in the application, about this "kitchen part." Atwood made the survey and filled up the application. The plaintiff was, however, responsible for the correctness of the representations. The referee has said nothing, in his finding of facts, upon this question; and whether there was any more evidence or any explanation, does not appear, as we have a bill of exceptions. The referee must have found that there was no material misrepresentation. Whether this "one story wood kitchen part *attached*" to the stone dwelling was a mere temporary structure, or how it was constructed and *attached*, does not appear. The application was for insurance upon the "stone dwelling house." That was sufficiently and truly described, unless the "kitchen part attached" is to be regarded as a part of the house. There is no complaint that the description was not true as far as it went; but if the "kitchen part attached" was part and parcel of the house, then the description was not full and complete.

In *Fowler* v. *Ætna Ins. Co.* (6 *Cowen*, 673,) the description was false. The description was a framed house *filled in with*

*brick.* In truth the walls were hollow—not filled in with brick; thus the description was affirmatively false. I am inclined to the opinion that we cannot say, as the case appears before us, that the referee was bound to find a false representation or description of the "stone dwelling house."

As a part of the information desired, the applicant was required to "describe the distances and directions of adjacent buildings and their materials and occupation. Construct on the third page a ground plan of the premises and other property within one hundred feet, giving the distances, direction and occupancy." An answer was given to this, mentioning several buildings. No objection is made to this answer, unless it is that it failed to say any thing of the "kitchen part attached." If this should have been mentioned in this answer, it will not follow that the omission to mention it avoided the policy. By the by-laws the application is a warranty, and it is made a part of the policy and contract of insurance. (*Art.* 6.) We are to keep in mind that there was nothing said in the application as to this "kitchen part attached." The application is entirely silent; and the question therefore is, whether the failure to notice it was such a suppression of a required fact as to render the policy void. In the 13th article of the by-laws it is declared, "Unless the applicant for insurance shall make a true representation of the property on which he requests insurance, *so far as concerns the risk and value thereof,* the policy issued thereon shall be void." These by-laws constituted a part of the contract. The provision here referred to is important. Unless the applicant makes a true representation of the property, *so far as concerns the risk and value thereof,* the policy shall be void. Here the effect of the absence of a true representation is declared, viz. that it shall avoid the policy; but what representations? not all. It is only those which concern the *risk* and value of the the property. This being so, the questions arising upon all omissions to make true representations of the property become questions of fact, whether the risk was increased or the value overstated. In the case before us, the question was whether the omission to state the existence of the "kitchen part attached"

affected the risk; or, in other words, whether the risk was increased by this "kitchen part attached." This was a question for the referee, and he has found upon it against the defendant. It will be seen that *Burritt* v. *Saratoga Ins. Co.* (5 *Hill*, 188,) and the cases following that case, are not in point in this case. Any misrepresentation or concealment in the application, made the policy void and of no effect. Here the representations *made* were a warranty. None was made, as to the kitchen part attached, and the absence of a true representation of the property, so far as concerned *the risk*, avoided the policy. The defendant answered the last question, "Are there any other material circumstances?" in the negative. This was his opinion, and it seems to have been the opinion of the referee. If it be held to be a warranty, the referee has found that it was not broken. (*See Gates* v. *Mad. Co. Mut. Ins. Co.* 2 *Comst.* 49; *S. C.* 1 *Selden*, 469.)

Some exceptions were taken during the progress of the trial. I have examined them, but shall only remark that, in my opinion, they were not well taken. Upon the whole case, I think the judgment should be affirmed.

[ERIE GENERAL TERM, September 8, 1856. *Bowen, Mullett, Greene* and *Marvin*, Justices.]