## ACER *vs.* THE MERCHANTS' INSURANCE COMPANY, of Hartford.

A party holding a contract for the purchase of premises from the owner, on which he has made payments, has an insurable interest in the premises.

And although a third person, to whom such party has contracted to sell the premises, has without his consent, obtained a conveyance from the owner, this will not affect such party's rights. Such third person, having full knowledge of those rights, will hold the title subject thereto.

Such party still has the equitable title, until his rights are adjusted. His right is not a conditional right, but an absolute right, to the extent of his ownership, or equitable title. He is therefore not guilty of any fraud which will vitiate a contract of insurance, in representing himself as the owner of the property.

A policy of insurance, issued to the plaintiff by the defendant, contained this condition: "If the assured, or any other person or parties *interested* shall have existing, during the continuance of this policy, any other contract or agreement for insurance, (whether valid or not,) against loss or damage by fire, on the property hereby insured, not consented to by this company," &c., "then this insurance shall be void and of no effect," &c. *Held* that the "other persons or parties interested," specified in the condition, referred to parties interested in the plaintiff's *insurance*, merely; and that it was not the understanding or intention that any other person who might have a separate interest in the *property*, and not connected in interest with the plaintiff, and having no interest in his insurance, might avoid the plaintiff's contract by obtaining an insurance of his own interest in the property, without the plaintiff's knowledge or consent.

THIS was a controversy submitted to the court without action, under section 372 of the Code of Procedure, upon a case agreed on by the parties, centaining the following facts:

The defendant is a fire insurance company, duly incorporated, and doing business in the State of New York, by virtue of the laws thereof. On the 24th day of April, 1867, the plaintiff was in possession of two certain parcels of land, situate in Rochester, (particularly described,) being the same lands described in the contract of the plaintiff with Geo. G. Curtiss, annexed to the case, marked "A." He held possession of the first described piece of land under a contract from Charlotte H. Brown, executrix, who

held the title, for the sale and purchase thereof, which contract was annexed, marked "B," and upon which the several payments had been made by the plaintiff as they became due. The buildings and the machinery on the premises described in the contract marked "B," and which were worth several thousand dollars, had been erected and placed thereon by the plaintiff since its purchase by him. He held the legal title to the second described piece of land, and the dwelling thereon, which he had never conveyed. On said 24th day of April, 1867, the plaintiff entered into a contract of sale of said premises with Geo. G. Curtiss, a copy of which was annexed, marked "A," and on the same day, the said Curtiss entered into the use and possession of the premises, and has continued the same to the present time.

The plaintiff, on the day last aforesaid, received a deed from Curtiss of the property by said contract to be conveyed to him, and entered into, has since been, and now is in possession thereof.

There was a part of a lot next adjoining the Magne street property, which Curtiss was desirous of obtaining, and which still belonged to Mrs. Brown as executrix, and in reference to the sale of which the said Acer and Mrs. Brown had had some negotiations, and after making the aforesaid contract, marked "A," Acer and Curtiss went together to DeLancey Crittenden, Esq., and he was requested to correspond with Mrs. Brown, who was then at Brooklyn, N. Y., on the subject, and to ascertain whether or not the deed to be given by Mrs. Brown under her contract with Acer might not run directly to Curtiss instead of Acer, and the bond and mortgage to be given back under the contract, be given by Curtiss instead of Acer. The result of this correspondence and negotiation with Mrs. Brown 'was, that she agreed to sell to Curtiss the above mentioned adjoining parcel for $325, and to include that with the land mentioned in the contract with Acer in

a deed running directly to Curtiss, and a deed was accordingly made out, dated the 3d day of June, 1867, running from Mrs. Brown, as executrix, to Mr. Curtiss, reciting a consideration of $1550, and conveying to Curtiss the land included in her contract with Acer and the above mentioned additional parcel, which deed, acknowledged by Mrs. Brown, was left in the hands of her agent, DeLancey Crittenden, and a copy of which was annexed to the case, marked " C."

On the 5th day of June, Curtiss, without the knowledge or consent of Acer, called on Crittenden and requested of him the delivery of the deed to him, (Curtiss;) and in response to Mr. Crittenden's inquiry, as to whether he (Crittenden) was authorized to make such delivery under the agreement between Curtiss and Acer, was assured by Curtiss that it was all right, and Mr. Crittenden thereupon delivered the deed to Curtiss without any previous direction from Mr. Acer to make such delivery, receiving from Curtiss $600 of the consideration, and taking Curtiss' bond and mortgage for the balance unpaid, being $281.50, and which included the purchase price of the aforesaid additional lot ; and Curtiss, on the same day, to wit, the 5th day of June, 1867, caused said deed to be recorded in the office of the clerk of Monroe county, and without executing to the plaintiff the mortgage of $3380.20, executed and delivered to one Daniel P. Westcott a mortgage upon the lands included in this deed, conditioned as security for $6000, which was made up of a present consideration of money and securities of $1750, and a precedent debt from Curtiss to Wescott of the balance of $6000, a part of said present consideration being used by Curtiss to pay upon the purchase price to Mrs. Brown of $550. That said response aforesaid, that it was all right, made by Curtiss to Crittenden, was false, and said deed was thereby obtained by said Curtiss from Crittenden with the intent on the part of said Curtiss to execute said $6000 mortgage to

Acer *v.* Merchants' Insurance Co. of Hartford.

Wescott, prior to giving the mortgage to the plaintiff, as provided in his said contract with the plaintiff. * * *

Sometime in the month of December, A. D., 1867, the plaintiff, having learned of the delivery of the deed to Curtiss, and of the mortgage to Wescott, tendered to Curtiss a deed of the second described piece of land to him, and demanded of him a mortgage of all the premises, as required by the contract marked "A." Curtiss was willing to give a mortgage to the plaintiff, which would be a subsequent lien to the Wescott mortgage, but the plaintiff would not accept, demanding one prior, in point of lien, to the Wescott mortgage, and claiming that the delivery of the deed by Crittenden to Curtiss was unauthorized, and a fraud upon his rights. The plaintiff, Acer, thereupon commenced an action in the Supreme Court against the defendant, Curtiss, and Daniel P. Wescott, upon a complaint alleging the foregoing facts, and that the delivery of said deed to Curtiss, by Crittenden, was fraudulent and unauthorized, and stating that he did not know of the fraudulent delivery of said deed, made and executed by the said Charlotte H. Brown, and so delivered by Crittenden, her attorney, to Curtiss, nor the making, executing or delivery of said mortgage to Wescott, until on or about the 5th day of December, 1867, and that he had thereupon immediately given notice to Wescott of his rights in the premises, and demanded of Curtiss the fulfillment of his said contract, and also that he had given notice to Wescott that the deed from Mrs. Brown to Curtiss, so far as the premises described in contract marked "A" was concerned, was fraudulently obtained, and that there had never been an absolute delivery thereof to Curtiss, and also alleging that Curtiss was in embarrassed circumstances, and that the plaintiff had no adequate remedy at law, and that unless the relief demanded in the complaint was granted, the plaintiff would be in great

danger of losing and being defrauded out of a large portion of the purchase money of said premises; and the complaint asked that the said mortgage, given by George G. Curtiss and Debby A., his wife, to Daniel P. Wescott, be set aside, canceled and declared fraudulent and void, as regards this plaintiff, so far as the premises on Magne street, first described in contract marked "A," are concerned and affected thereby; that said Wescott be ordered and directed to execute and put upon the records of Monroe county clerk's office, a release, or full satisfaction of said mortgage, so far as said premises were affected thereby, duly executed and acknowledged, and that this court order, decree and direct, that the deed from said Charlotte H. Brown, executrix, &c., so far as the last aforesaid premises were concerned and affected thereby, be set aside, canceled and declared null and void, and canceled of record, and that the said Charlotte be ordered and directed to deed said premises to the plaintiff, subject to her mortgage of $281.50, given by Curtiss thereon, unless Curtiss should make, execute and deliver a good and sufficient mortgage of $3380.20 upon said premises, the lien thereof second only to the lien of said mortgage of $281.50, and comply in every respect with the terms and agreements of said parties. That said court order and decree a specific performance of said contract on the part of said Curtiss and said Charlotte, or that she make, execute and acknowledge a new deed to Curtiss, and deliver it to Acer, and for such other relief as to the court might seem meet and proper in the premises.

The complaint and *lis pendens* in that action were filed in Monroe county clerk's office, and the former was sworn to on the 28th day of January, 1868, but after the plaintiff had obtained the policies of insurance hereinafter set forth; and the summons therein was served by a private person, other than the sheriff or his deputy, on Curtiss and his wife, and Daniel P. Wescott, on the 4th day of

February, 1868. In that action a judgment was recovered February 3d, 1869, in favor of the plaintiff and against the defendants Curtiss and Wescott, whereby the plaintiff was adjudged to have a lien upon the property included in contract marked " A," for the payment of said sum of $3380.20 prior to the lien of said Wescott, and that the said mortgage to the defendant Westcott is subordinate to such lien, &c. From this judgment the defendant Curtiss did not appeal.

On the 28th day of January, 1868, but before the commencement of said action, the plaintiff applied to Messrs. McLean & Johnson, agents for the defendants at Rochester, for insurance on the above described premises, informed them that he was the owner thereof, that he had sold the same to Curtiss, and showed the contract marked " A" to said agents, and informed them that Curtiss had neglected to insure the property as he had agreed to do by that contract, because, as he stated, Curtiss said the insurance companies charged such high rates for insuring it, and he, the plaintiff, thought it ought to be insured. The said agents thereupon executed and delivered to the plaintiff a policy of insurance of the defendant, insuring said property to the amount of $1000, for the term of one year from said January 28th, 1868, and at the same time issued two other policies on the same property, for the same amount and time; one in the Tradesmen's Insurance Company of New York, and one in the Narragansett Insurance Company of Providence, Rhode Island, and the plaintiff paid them therefor.

On the — day of June, 1868, Curtiss applied to Messrs. Buell and Brewster, insurance agents at Rochester, for insurance upon said property, informed them of the insurance made by the plaintiff, and took out other insurances thereon to the amount of $4200, in different companies represented by them, viz : $1050 each in the Putnam Insurance Company of Hartford, Norwich Insur-

ance Company of Norwich, Conn., and the Mutual Insurance Company and Western Insurance Company of Buffalo, New York. The plaintiff had no knowledge of this insurance until after the fire. A fire occurred on the 21st day of August, 1868, by which loss and damage was sustained to the property insured, to the amount of $3657.70, which amount, except that occurring on the dwelling, had been paid to Curtiss by the companies so insuring him. Notice of the fire and proofs of loss were duly given to the defendant, as required by the conditions of their policy. No part of the loss had been paid to the plaintiff. The plaintiff claimed to recover of the defendant, as follows:

$68.24 on frame dwelling-house.
318.05 on brick and frame building.
466.66 on engine, boiler, machinery, fixtures, shafting, belting and pulleys, making in all $852.95, with interest from the 1st day of February, 1869.

The defendant denied all liability to the plaintiff, but admitted that if liable, the plaintiff was entitled to the above sum.

The question was, whether, upon the above facts, the defendant was liable.

*W. F. Cogswell,* for the plaintiff.

I. A purchaser, under contract, of real estate that is the subject of insurance, has an "absolute interest"—a perfect title to the insured property, within the meaning of the following provision of the policy: "Any interest in property insured not absolute, or that is less than a perfect title, or if a building is insured that is on leased ground, the same must be specifically represented to the company, and expressed in this policy in writing; otherwise the insurance will be void." The material thing for the parties contracting to know, is the interest at stake in

the property, and whether it is the same interest in kind as that insured; not whether the interest is created by a particular form of writing, with a seal, and called a deed, or a little different form, and called a covenant, and without the little adhesive plaster, and called a contract. The title of that person to property is not less than absolute and perfect, whose loss will be complete by its entire destruction; no matter what the precise form of the instrument by which his right is created. But this question is too well settled by authority to make *a priori* discussion profitable. (*Hough* v. *City Fire Ins. Co.,* 29 *Conn. Rep.* 10. *Chase* v. *Hamilton Mu. Ins. Co.,* 22 *Barb.* 527. *Reynolds* v. *State Mu. Ins. Co.,* 2 *Grant's Penn. Rep.* 326. *Hope Mu. Ins. Co.* v. *Brolarky,* 35 *Penn. Rep.* 282. *Tyler* v. *Ætna Ins. Co.,* 12 *Wend.* 507. *S. C.,* 16 *Wend.* 385.)

II. The policy is not void by reason of the clause forbidding other insurance without notice to the company, usually known as double insurance. 1. It has been held in some, and assumed in a multitude of cases, that when the language is general, as that notice of all previous insurance must be given, &c., under penalty of forfeiture, the claim relates only to other insurance upon the same insurable interest, either in the name of the owner of that interest, or of some one for his benefit. (*Mutual Ins. Co.* v. *Hone,* 2 *Comst.* 235. *Ætna Ins. Co.* v. *Tyler,* 16 *Wend.* 385.) The language of this clause expresses precisely what was implied by the court, from the general language. "If the assured, or any other person or parties interested, shall have existing, during the continuance of this policy, any other contract or agreement for insurance (whether valid or not) against loss or damage by fire, on the property hereby insured, or any part thereof, not consented to by this company in writing, and mentioned in or indorsed upon this policy, then this insurance shall be void and of no effect; and, if consent be indorsed thereon, the assured shall not be entitled to demand or recover of this

company any greater portion of loss or damage sustained than the amount hereby insured shall bear to the whole amount of such contracts or agreements for insurance, whether valid or not, or made prior or subsequent to the date of this policy, whether such insurance be by special or by general or floating policies." Interested in what? We answer, in the insurance. Not interested in the property. The latter construction is not the grammatical one. The word interested is in relation to the word assured, and cannot, without violence to the grammar of the sentence, be made to relate to the word property. 2. But the construction claimed would do even greater violence to the true meaning and spirit of the sentence than its grammar. That spirit and meaning is, that if the assured, or any person or party interested with the assured in the subject matter of the insurance, has, &c., then the insured shall be obliged to give notice. Such a requirement is natural and reasonable, since the assured may be presumed to know those things done in his interest, by those associated with him in interest, but not those done by strangers, and with which he has nothing to do. 3. This construction is also fortified by the latter part of the proviso in question, beginning, " and if consent be indorsed," &c., which, although very awkwardly worded, by omitting one term of the proportion, was doubtless intended to create what is called a case of pro rata insurance, but which can never exist when the assured interest is not the same. That is, an insurance upon a mortgaged interest is not pro rated with an insurance effected by a judgment creditor, or the owner in fee. They are entirely different interests, and the loss and damage which each sustains is a different loss or damage, in the language of insurance law. 4. If we are wrong in our construction of this, then the plaintiff was not bound to give notice of the other insurance until he knew of the same himself. It is admitted that he did not learn of such other insurance until after the fire.

Acer *v.* Merchants' Insurance Co. of Hartford.

5. The construction understood to be put upon this provision would create such a condition as would be void as unreasonable and unjust.

*Geo. F. Danforth,* for the defendant.

On the 28th day of January, 1868, the plaintiff procured a policy of insurance from the defendant, covering a frame and brick building on Magne and Smith streets, Rochester, with machinery therein, and a dwelling-house near it. When applying for the policy, he represented to the defendants that he was the owner of the property, but had sold the same, by contract, to one Curtiss. The policy describes the property as Acer's, but states, "that it is sold, by contract, to Geo. G. Curtiss, who occupies the same." The contract referred to in the policy, is set out in the case. It is dated "April 24, 1867." At this time the legal title to the dwelling-house was in Acer, and the legal title to the rest of the property in Mrs. Brown. She had given him a contract for its conveyance upon the performance by him of certain conditions, which contract he then held, and on which was unpaid the sum of $550. The contract to Curtiss conveyed all the property, and under it he, at once, went into possession. In June, 1867, by the consent of Acer, Mrs. Brown executed a deed to Curtiss, and sent it to her attorney, by whom it was delivered to Curtiss, and by him placed on record, June 7, 1867. Acer learned of the delivery of the deed as early as December, 1867, so that he knew when he applied for the policy that Curtiss had not only a contract, but a deed. At the time Acer procured the policy, leave was given for $2000 more insurance, which sum he at once procured. The same day that Acer procured his insurance, he commenced an action against Curtiss, in substance, to have the money due him from Curtiss upon the contract, declared a lien upon the premises referred to in the contract. In June, 1868, Curtiss procured insurance upon the same property for $4200,

and in August, 1868, the premises were destroyed by fire and a loss incurred of $3656.70. All of which was paid to Curtiss, except the trifling loss upon the dwelling-house.

The plaintiff is not entitled to judgment.

I. The policy of insurance under which he claims, was rendered void by the subsequent insurance obtained by Curtiss. The policy in question was issued January 28th, 1868. In June, 1868, other insurance was procured by Curtiss upon the same property to the amount of $4200. No notice of this subsequent insurance was given to the defendant, nor was it consented to by them, or mentioned in, or indorsed upon the policy. 1. By reason of these facts, the insurance made by the defendants became null and void by the express terms of the condition on which it was granted. The validity and reasonableness of such condition cannot now be questioned. (*Mellen* v. *Hamilton Fire Ins. Co.*, 17 *N. Y. Rep.* 609. *Bigler* v. *N. Y. Central Ins. Co.*, 22 *id.* 402.) And the condition embraces all subsequent insurance, although procured by Curtiss. (*a.*) Acer had once an equitable title to the property, but had agreed to sell it to Curtiss. Curtiss had made payment in part, and was in possession of the property at the time of both insurances. Curtiss, as well as Acer, therefore, came within the terms of the condition, which expressly includes "the assured or any other person or parties interested." (*b.*) The case is unlike the case of *Tyler* v. *Ætna Ins. Co.*, (12 *Wend.* 507, *and* 16 *id.* 385,) where the 'condition included only the "assured and his assigns." 2. The reason of the condition applies as well to an insurance effected by Curtiss as to one effected by Acer. (*a.*) To enable the insurer to ascertain for what proportion of a loss they might eventually be liable for; and (*b.*) Chiefly, because a knowledge, during the life of the policy, of the amount of the insurance is necessary to enable the company to determine whether it does not exceed the value of the premises. The duty of ascertaining and seeing to it that no other

Acer *v.* Merchants' Insurance Co. of Hartford.

insurance is obtained without the consent of the company; and if obtained, that their consent is given in the manner specified, is one assumed by the assured. This case indicates the importance of the provision in question. The defendant was notified that Acer was the owner of the property, but had agreed to sell it to Curtiss. Upon application for this insurance the defendant accepts the risk to the extent of $1000, and writes upon the policy permission for $2000 other insurance, thus fixing its insurable value at $3000. Acer avails himself of this permission; on the same day commences a litigation with Curtiss to enforce his lien, and, directly after, Curtiss procures an insurance of $4200 upon the same property. In August following the property is burnt, having upon it an insurance of $7200. The insurer may, for any reason, or without any, at their option, terminate the insurance, upon notice to the assured; but in the case of non-compliance with the provision in question, the insurance, at once, and without notice, terminates. It is no answer to this position, to say that the policy gave liberty for $2000 other like insurance. That clause was acted upon by the plaintiff in procuring that amount of additional insurance. The other insurance obtained by Curtiss amounted to $4200. (*See Bigler* v. *N. Y. Cent. Ins. Co.*, 22 *N. Y. Rep.* 404.)

II. The plaintiff obtained the policy in question, by misrepresenting to the defendant the nature of his interest in the property insured. He stated that he was the owner; that he had sold the same to Curtiss, and showed to them the contract; that Curtiss had neglected to insure as he had agreed to by the contract, because the rates were too high; and he, the plaintiff, thought it ought to be insured. This representation was made on the 28th day of January, 1868. At this time he was not the owner of the property insured. 1. The legal title to the frame and brick building, containing the machinery, &c., being the first two items insured, and constituting by far the larger part of

the property, had never been in the plaintiff. At the time
of the execution of the contract to Curtiss, referred to in
the policy, and from that time down to the execution of
the deed to Curtiss, June 3, 1867, the legal title was in
Mrs. Brown. After that time, and on the 28th day of
January, 1868, the legal title to the whole property was
in Geo. G. Curtiss. The plaintiff had himself assented to
and procured the execution of the deed to Curtiss. This
deed was executed and acknowledged on the 3d day of
June, 1867, and recorded in Monroe county clerk's office
on the 7th day of June. And as early, at least, as Decem-
ber, 1867, the plaintiff knew that such deed had been ex-
ecuted, acknowledged, delivered and recorded. 2. Curtiss
was in the actual possession of all the property insured,
from the 24th day of April, 1867, down to, and at, and
beyond the time of the insurance in question. The plain-
tiff, therefore, was not on the 28th day of January, 1868,
the owner of the property insured, either at law or in
equity. (*a.*) Not at law, for he had not a deed. (*b.*) Not
in equity, for he had transferred his interest to Curtiss,
and given up possession. 3. Curtiss was, at the time the
plaintiff procured the policy, in law and equity, the owner
of the property in question. (*a.*) At law, by virtue of the
deed. (*b.*) In equity, by virtue of the contract and pos-
session.

III. The policy is void, because the true character of
the interest which the plaintiff had in the property was
not absolute, and was not specifically and truly represented
to the company, and expressed in the policy in writing.
The interest of the plaintiff in the insured property was
not absolute. 1. "Absolute" is used in the policy as
synonymous with "vested," and is used in contradistinc-
tion to "contingent," or "conditional." 2. The plaintiff's
interest in all the property insured, was purely contingent,
conditional; at the utmost, he had only a lien upon it for
the unpaid purchase money. If Curtiss fulfilled his con-

tract, the whole loss, in case the property was destroyed, would fall on Curtiss, and none on the plaintiff; such an interest can in no sense be absolute. Curtiss was the substantial owner of the property insured. He had the legal title. He was in possession, and if the legal title can be questioned, as obtained by fraud, his equitable interest covered the whole property. This view of the respective interests and titles of Curtiss and Acer, is confirmed by the fact that, in the litigation between Curtiss and Acer, the judgment of the court does not disturb the deed so executed and delivered to Curtiss, but merely declares that Acer has a lien on the premises by way of mortgage. The condition is a reasonable one, and the misrepresentation as to title, material. (*Columbia Ins. Co.* v. *Lawrence,* 10 *Peters,* 507. *Wilbur* v. *Bowditch Ins. Co.,* 10 *Cush.* 446. *Walrath* v. *Ins. Co.,* 10 *Upper Canada R.* 525; *cited in Digest of Fire Ins. Cases,* 578. 10 *id.* 353; *cited as above,* 579. *Jenkins* v. *Quincy Ins. Co.,* 7 *Gray,* 370. *Birmingham* v. *Empire Ins. Co.,* 42 *Barb.* 457.)

IV. An unsuccessful effort on the part of Acer to enforce payment from Curtiss and from the premises, is a condition precedent to the liability of the defendant. The interest of Acer, if any he has, is that of mortgagee; he holds a claim for the money against Curtiss, and has a lien upon the premises described in the contract for its payment. Such was his position when he procured the policy, and it is now declared by the judgment of the court, rendered on his application, presented the very day that he procured the policy. Until in due course of law he fails to enforce it, the defendant is not liable.

V. The whole policy is void if by reason of the above objections any part is. The policy is an entire contract and indivisible. (*Associated Fire Ins. Co.* v. *Asum,* 5 *Md.* 165. *Lee* v. *Howard Ins. Co.,* 3 *Gray,* 583. *Smith* v. *Empire Ins. Co.,* 25 *Barb.* 497. *Kimball* v. *Howard Ins. Co.,*

8 *Gray*, 33. *Lovejoy* v. *Ayer M. Ins. Co.*, 45 *Maine R.* 472.
*Barry* v. *Union M. Ins. Co.*, 61 *id.* 110.)

VI. But, if otherwise, judgment may be rendered for
either one of the several items.

*By the Court,* JOHNSON, P. J. The plaintiff, at the time
he procured the policy in question, had an insurable inter-
est in the premises. He held a contract for the purchase
from the owner, Mrs. Brown, and had made several pay-
ments thereon. Before obtaining the policy, he had con-
tracted to sell the premises to Curtiss, and Curtiss had
obtained a conveyance of the fee from Mrs. Brown without
the plaintiff's consent. But this conveyance to Curtiss did
not affect Acer's rights. Curtiss having full knowledge of
the plaintiff's rights, held the title subject thereto, as Mrs.
Brown did before such conveyance. The plaintiff still had
the equitable title, until his rights were adjusted, as we
have held in another case in reference to the same prop-
erty, under this contract between the plaintiff and Mrs.
Brown. It was not a conditional right, but an absolute
right, to the extent of his ownership, or equitable title.
The plaintiff was not guilty of any fraud, which vitiates·
the contract, in representing himself as the owner of the
property. He exhibited his contract with Curtiss, and the
defendants were fully informed of it. The cases of *Chase*
v. *Hamilton Mutual Insurance Co.*, (22 *Barb.* 527;) *Tyler* v.
*Ætna Insurance Co.*, (12 *Wend.* 507; *S. C.*, 16 *id.* 385, *in
the Court of Errors,*) entirely settle both points, as to the
insurable interest, and the absence of fraud by means of
the representation.

The remaining question is whether the plaintiff's policy
was avoided by the act of Curtiss in taking out a policy on
the same property, subsequent to the plaintiff's. The
plaintiff was ignorant that Curtiss had procured an insur-
ance upon the property until after the loss by the fire had
occurred. The plaintiff's insurance was of his own inter-

Acer *v.* Merchants' Insurance Co. of Hartford.

est, and that of Curtiss upon his interest in the same property. The plaintiff's policy has this condition: "If the assured, or any other person or parties interested, shall have existing during the continuance of this policy, any other contract or agreement for insurance (whether valid or not) against loss or damage by fire, on the property hereby insured, not consented to by this company," &c., "then this insurance shall be void and of no effect," &c. This is a general provision, and the question is, whether the "other persons or parties interested," specified in the condition, refers merely to parties interested in the plaintiff's insurance, or to other parties who may have a different interest in the property, from that held and owned by the plaintiff, and who may obtain insurance upon their interests in the same property. I am clearly of the opinion that the condition is limited to the former class, and that it was not the understanding or intention that any other person who might have a separate interest in the property, and not connected in interest with the plaintiff, and having no interest in his insurance, might avoid the plaintiff's contract by obtaining an insurance of his own interest in the property, without the plaintiff's knowledge or consent. Such a construction would render the contract exceedingly harsh, unreasonable and oppressive, and the parties will not be deemed to have so contracted, if the language used by them fairly admits of a different interpretation. I think the interpretation I have adopted is not only more in consonance with justice, but with the rules of language. By this rendering, "the parties interested" is construed to mean those interested with the plaintiff in his contract, instead of outside persons who might have some distinct and separate interest in the property. The same construction was given to similar language in the case in 12th and 16th *Wend.* before cited, and also in *The Mutual Safety Insurance Co.* v. *Hone,* (2 *N. Y. Rep.* 235.) In that case, such words were held to apply only to a double insurance of

the same·interest. I am of the opinion, therefore, that the plaintiff's policy is entirely valid, and that he is entitled to recover the damages sustained by him, to the amount agreed upon, with his costs of the action.

This view disposes also of the other case argued with this, that of *Acer* v. *The Narraganset Fire and Marine Insurance Co.* Judgment in that case is also ordered in favor of the plaintiff, for the amount of loss and damage agreed upon, with costs of the action.

[MONROE GENERAL TERM, March 7, 1870. *Johnson*, P. J., and *J. C. Smith*, and *Dwight*, Justices.]