PETER DE WITT, Respondent, *v.* AGRICULTURAL INSURANCE COMPANY of Watertown, New York, Appellant.

*Fire insurance policy — construction of indorsements thereon — when an agreement that the policy shall be void if other insurance is obtained, does not apply — who is the insured in a policy — when an insurance company is estopped from objecting to proofs of loss.*

Courts are bound to construe indorsements upon policies of fire insurance in such manner as to give them full vigor and effect for the purposes for which they were made and intended.

Upon the trial of an action brought to recover damages occasioned by a loss by fire under a policy of fire insurance, it appeared that the policy was issued by the Agricultural Insurance Company to one Lockwood who was then the owner of the property insured. Lockwood subsequently conveyed the property to one Smith, and took from Smith a mortgage to secure the payment of a portion of the purchase price, and thereupon the insurance company, with full notice of that fact, made an indorsement on the policy as follows: "Warren E. Smith is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided, and loss, if any, first payable to Hanford Lockwood, mortgagee, as interest may appear." This policy contained the following clause: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered, in whole or in part, by this policy."

Afterwards, Smith contracted to sell the insured property to George E. Nichols, who entered into possession of the same under his contract of sale, and com-

menced making repairs to the same, but had not received a conveyance of the property. On December 22, 1892, Nichols applied to the Liverpool, London and Globe Insurance Company for insurance on the buildings, and obtained a policy which was in full force when the insured property was destroyed by fire. Five days after the issuance of the policy of insurance to Nichols, the Agricultural Insurance Company, at the request of Lockwood, made another indorsement upon the policy as follows: "George E. Nichols is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided." This indorsement was obtained and made without the knowledge of Nichols at the time it was made.

On January eleventh the insured property was wholly destroyed by fire, and in due season the proofs of loss were served by Nichols upon the Agricultural Insurance Company. These were kept and retained by the company without objection that they were not served by the proper party or were not proper in form or substance. Nichols was also the assignee of all the rights of Lockwood under such policy.

*Held,* that Nichols occupied no such relation to the policy held by Lockwood as "*the insured*" at the time he obtained the policy of insurance from the Liverpool, London and Globe Insurance Company; that he was no party to the contract, though he might be incidentally benefited by it if a loss had occurred and had been paid by the company to Lockwood under the indorsement then existing on the policy;

That even though the indorsement made by the Agricultural Insurance Company five days after the issuance of the policy to Nichols by the Liverpool, London and Globe Insurance Company recognizing Nichols as the owner of the policy put him at that time in the position of "*the insured,*" that could not operate to make him "*the insured*" as of the date when he took the insurance from the Liverpool, London and Globe Insurance Company; that the law gives no such retroactive effect to such an indorsement for the purpose of destroying a policy of fire insurance, although it will give such effect when necessary for the purpose of preserving from that or similar consequences;

That what the Agricultural Insurance Company did in recognizing Nichols as owner of the policy as well for his benefit as the benefit of Lockwood, the mortgagee and holder, must be construed as making Nichols "*the insured*" as of that date, if at all, and not as bringing him into that relation for the purpose of annulling the policy under the clause above mentioned;

That Nichols was not the insured under the policy of insurance issued to Lockwood when he took the insurance in the Liverpool, London and Globe Insurance Company; that his act in taking that insurance did not vitiate the policy held by Lockwood; that the consent of the Agricultural Insurance Company to regard him as the *owner of the policy* by the indorsement subsequently made thereon had no other effect than to bring him into such relations as those recognized and accepted by the company afterwards when it received from him and retained the proofs of loss required by the policy to be made by the party entitled to the insurance;

That when Nichols took his policy of insurance in the Liverpool, London and Globe Insurance Company he had an insurable interest in the property by reason of his contract to purchase, which policy attached to such insurable interest and was not within the prohibition clause contained in the policy issued to Lockwood;

That there was no such breach of the conditions of the policy by Lockwood or Smith or Nichols as justified the Agricultural Insurance Company in refusing to pay the loss;

That the Agricultural Insurance Company was estopped from asserting that the proofs of loss were not served or made by the proper person, and that it was liable for the full amount of the loss under the policy without apportioning the loss with the policy issued to Nichols.

APPEAL by the defendant, the Agricultural Insurance Company of Watertown, New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 18th day of September, 1894, upon the report of a referee.

The action was brought to recover under a policy of fire insurance ; the fire occurred on January 11, 1893, and the property was wholly destroyed.

*A. H. Sawyer,* for the appellant.

*Theron G. Strong,* for the respondent.

Present — BROWN, P. J., DYKMAN and PRATT, JJ.

Judgment affirmed, with costs, on opinion of referee.

The opinion of the referee was as follows :

NOAH DAVIS, Referee :

This case is, in my judgment, distinguishable in its facts in some respects, from all the great number of cases that have been called to my attention by counsel or examined by me.

No question is made or suggested but that the policy issued by defendant to Hanford Lockwood was a valid and obligatory instrument in his hands.   It was made on the 27th day of June, 1892, and it is not suggested but that every requirement and condition of the policy were then fully met and complied with.   Lockwood was then the owner of the property insured.   He subsequently sold and

conveyed that property to one Warren E. Smith; and thereupon defendant, with full notice of that fact, made an indorsement on the policy in these words:

" Warren E. Smith is now recognized as owner of this policy, and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided; and loss, if any, first payable to Hanford Lockwood, mortgagee, as interest may appear.    Twenty thousand dollars incumbrance is hereby permitted.

" Dated at N. Y. CITY, *August* 18*th,* 1892."

Afterwards, and on the 23d day of November, 1892, Smith bargained and sold the insured property to George E. Nichols (who, it seems, took possession, and commenced repairing the buildings).

Mr. Lockwood still held the policy of insurance for the purpose of the security of his mortgage in case of loss, as permitted by the indorsement of the company.    Afterwards, and on about the 27th of December, 1892, Lockwood applied to the defendant company, and presumably upon a statement of the existing facts, the company made another indorsement on the policy in these words:

" George E. Nichols is now recognized as *owner of this policy* and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided.

" Dated at N. Y. CITY, *Dec.* 27*th,* 1892."

This indorsement was obtained and made *without the knowledge of Mr. Nichols at the time it was made.*    Its obvious purpose was to keep the policy in full vigor for the benefit of Mr. Lockwood, to whom the loss, if any, was made payable by the former indorsement. Courts are bound to construe such indorsements in such manner as to give them full vigor and effect for the purposes for which they were made and intended.

In my judgment the manifest intent in this instance was to keep the policy in full force for the benefit of all concerned, as security for the payment of the mortgage held by Mr. Lockwood, and that necessarily involved the benefit of the property owner

It is shown that at the time of the making of this indorsement Mr. Nichols, the purchaser of the property from Smith, did not

know of the indorsement then made on the policy, and is of course not chargeable with any misrepresentation, if any were made; but it is not alleged or claimed that there was any fraud or misrepresentation on the part of any one.

On the 22d day of December, 1892, Nichols (who had entered into· possession of the property purchased from Smith and ·was engaged in making repairs, etc., but had not yet received a conveyance) applied to the Liverpool, London and Globe Insurance Company for insurance on the buildings, and obtained a policy in the sum of $3,500 on the dwelling, and $1,500 on the stable, which policy was in full ·effect when the insured property was destroyed by fire.

This insurance, it will be observed, was obtained by Nichols *five days* before the indorsement last above set for:h was made by the defendant upon the Lockwood policy. The original policy of defendant contains a clause in these words: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, *shall be void if the insured* now has or shall hereafter make or procure any other contract of insurance, *whether valid or not*, on property covered in whole or in part by this policy."

Such a condition is to be strictly construed because of its severe nature as a penal one. It will be observed that it only applies by its · terms to "*the insured*," that is, the person actually occupying the position of "*the insured*" under defendant's policy at the time the policy issues, or at the time the additional insurance is taken.

On the 22d day of December, 1892, Nichols occupied no such relation to the policy held by Lockwood as "*the insured.*" He was then no party to the contract, though he might be incidentally benefited by it if a loss had occurred and been paid by the company to Lockwood under the indorsement then˙ existing on the policy.

What his equities may have been, if any, in that regard, is not shown. But it does appear with absolute certainty that on the 22d day of December, 1892, when he took out the policy of the Liverpool, etc., Company, he was not "*the insured*" under the policy of defendant. No forfeiture could, therefore, attach by reason of the

act of Nichols in taking the new insurance, nor could the rights of Lockwood be destroyed or impaired by such act on his part under the then condition of the policy.

But if it be granted that the indorsement made by the company *five days afterwards* on the policy recognizing Nichols as the "owner of the policy" put him at that time in the position of "*the insured,*" that could not operate to make him "*the insured*" as of the date when he took the Liverpool insurance, because the law will not give any such retroactive effect to the indorsement for the purpose of destroying the policy. Such an effect is never given to such acts for the mere purpose of destruction, though often given when necessary for the purpose of preserving from that or similar consequences.

What the company did, therefore, in recognizing Nichols as *owner of the policy* as well for his benefit as the benefit of Lockwood, the mortgagee and holder, must be construed to make Nichols "*the insured*" as of that date, *if at all,* and not as bringing him into that relation for the purpose of annulling the policy under the clause now considered.

If Nichols at that time became "*the insured,*" the only consequence would be his responsibility as such for *future* breaches on his part, if any occurred, of the provisions of the policy.

The gravest injustice would result from regarding him as "*the insured*" five days before the company consented to regard him as the owner of the policy, and holding that by the very act of so accepting him, the company entitled itself to nullify its policy for something done by him before he became "*the insured,*" or had been accepted as the owner of the policy.

In my opinion, therefore, Nichols was not "*the insured*" under the policy in suit when he took the insurance in the Liverpool Company; and that his act in taking that insurance did not vitiate the defendant's policy; and that the consent of defendant to regard him as the *owner of the policy* by the indorsement subsequently made on the policy had no other effect than to bring him into such relations as those recognized and accepted by the defendant afterwards, when it received from him and retained the proofs of loss required by the policy to be made by the party entitled to the insurance.

But another answer to this defense is found in the fact that when

Nichols took his policy in the Liverpool, etc., Company, he had an insurable interest in the property by reason of his contract with Smith of purchase and sale, and agreement to convey at a fixed day, accompanied by possession, etc.    That policy must be held to attach to such insurable interest, and not to be within the clause of defendant's policy now under consideration.

In *Adams* v. *Greenwich Insurance Co.* (9 Hun, 45) one of the defenses was that plaintiff could recover, if at all, " only *pro rata* with another policy ; that is, two-thirds of the amount of loss."

The court held that other insurance mentioned in such a clause " does not include an insurance made by a mortgagee upon his interest as such " (Id. 48), and the court cited with approval, amongst other cases, *Acer* v. *Merchants' Insurance Co.* (57 Barb. 68).

In that case the language was :

" The plaintiff's policy has this condition, 'if the assured, or any other person or parties interested, shall have existing, during the continuance of this policy, any other contract or agreement for insurance (whether valid or not) against loss or damage by fire, on the property hereby insured, not consented to by this company,' &c., ' then this insurance shall be void and of no effect,' &c.    This is a general provision, and the question is, whether the ' other persons or parties interested,' specified in the condition, refers merely to parties interested in the plaintiff's insurance, or to other parties who may have a different interest in the property from that held and owned by the plaintiff, and who may obtain insurance upon their interests in the same property.    I am clearly of the opinion that the condition is limited to the former class, and that it was not the understanding or intention that any other person who might have a separate interest in the property, and not connected in interest with the plaintiff, and having no interest in his insurance, might avoid the plaintiff's contract by obtaining an insurance of his own interest in the property without the plaintiff's knowledge or consent.    *    *    *    I think the interpretation I have adopted is not only more in consonance with justice, but with the rules of language. By this rendering, ' the parties interested ' is construed to mean those interested with the plaintiff in his contract, instead of outside persons who might have some distinct and separate interest in the property.    The same construction was given to similar language in

the case in 12th and 16th Wend., before cited, and also in *The Mutual Safety Insurance Co.* v. *Hone* (2 N. Y. Rep. 235). In that case such words were held to apply only to a double insurance of the same interest."

The question in that case, it would seem, was quite analogous to the one now under consideration, and the court there held that the plaintiff's policy in that case was not affected by a policy issued to one Curtiss, to whom the plaintiff had contracted to sell the property. Curtiss occupied the same relation to the property in that case as that in which Nichols stood at the time he took the insurance in the Liverpool Company.

The case of *Adams* v. *The Greenwich Insurance Co.* was afterwards affirmed by the Court of Appeals (70 N. Y. 166), the court distinctly concurring with the opinion of Judge LEARNED on the question now under consideration.

The case of *Sanders* v. *Cooper* (115 N. Y. 279) is not hostile to these views. The main question in that case was as to the effect of a provision avoiding the policy in suit if a prior insurance existed when it was issued and that fact was not disclosed. The effort was to avoid the effect of that condition, when it appeared that there was a prior insurance, by showing that the agent who took the policy "was put upon inquiry, or might by the exercise of diligence have ascertained the truth" as to the existence of such former insurance. The court held that this was no answer to the defense. No such question is in this case. Another defense in that case was that the building burned was not the one described in and insured by the policy. The court held it not competent to show that the building destroyed was the one intended to be described in the policy, and that by mistake another which was not intended to be insured was the one described. The contract was held to be conclusive upon that question. I am at a loss to see any controlling bearing of that case upon the one now under consideration.

Nor in my opinion is the case of *Moore* v. *H. F. Insurance Co.* (141 N. Y. 219) decisive of the questions here involved. In that case the court held that notice to an agent that an action of foreclosure of a mortgage of the insured premises was about to be commenced, and his *verbal* assent thereto, did not constitute a waiver of a provision of the policy in a case where the policy provided that

"*no officer, agent or other representative* * * * *shall have power to waive any provision or condition of this policy* * * * *unless such waiver, if any, shall be written upon or attached hereto.*"

If this case be within the ruling of the court in *Moore* v. *H. F. Insurance Co.*, my duty is very plainly to follow and apply the ruling in that case, which I should certainly do for two reasons: *First,* because it is the decision of the court of last resort; and, *second,* it is manifestly correct in law.

The difference between that case and the present is that the waiver or change in the policy alleged in that case was not indorsed upon the policy as required by its plain terms; in this case the indorsements upon the policy were made by a competent officer, and the question is upon the effect, force and meaning of such indorsements.

If the indorsements can be legally or equitable construed to sustain the alleged liability of the defendant for the loss of the property insured, in my judgment they clearly ought to be so construed.

Their construction must be made in the light of the surrounding circumstances and with a view to seeing what the parties intended to accomplish by them.

When the first indorsement was made, to wit, that of August 18, 1892, Lockwood, the insured owner of the property, had sold the same to Smith, but wished to keep the policy alive and in full force so that Smith should be its owner, but in case of loss it should be *first payable to himself as mortgagee as his interest might appear.* To carry this desire of Lockwood into effect was manifestly the purpose and intent of the indorsement, both on the part of Lockwood and of the company. Examine carefully the language of the indorsement.

" Warren E. Smith is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided, and loss, if any, first payable to Hanford Lockwood, mortgagee, as interest may appear. Twenty thousand dollars incumbrance is hereby permitted.

" Dated at N. Y. CITY, *August 18th,* 1892.

"C. PATTERSON & SON, *Gen'l Agents.*"

No question is made that this indorsement is not to be deemed the act of the company. It is, therefore, the defendant's act, and it is to be carried into effect by the court giving to it such construction as will fully accomplish its manifest intent and purpose.

If to do so requires changes in the policy, consistent with law and competent for the parties to make, they are to be made or to be deemed made, as the legal rights and the equities of the parties require. Lockwood is to be recognized and deemed not as owner any longer, but as mortgagee of the insured property, which may be incumbered by the present owner to the amount of $20,000. (A mortgage to that amount doubtless then covering this with other parcels of land.) Smith is to be recognized as the legal or equitable owner of the policy, subject, of course, to Lockwood's right to receive the loss, if one occurs, and the insurance is to remain *mutatis mutandis*, as though originally made in that form. All rules and conditions of the policy are kept in full force, except as necessarily modified or changed by these new relations.

Afterwards Nichols became a purchaser of the premises from Smith, subject to the mortgage of Lockwood. He entered into possession under his contract of purchase and commenced making repairs. His contract of purchase gave him immediate possession as owner, but the conveyance was to be made to him at a later date, which happened to be a short time after the fire.

When these things occurred Mr. Lockwood again applied to the general agents of the company, who made this indorsement upon the policy :

" George E. Nichols is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided.

" Dated at N. Y. CITY, *Dec. 27th*, 1892.

" C. PATTERSON & SON, *G'l Agents.*"

This was done at the request of Mr. Lockwood, still holder of the mortgage secured by the policy, with the full assent of the company. There was no intent to deprive Lockwood of that security or his rights under it, but, on the contrary, to maintain and protect his rights, and his title to receive payment of any loss that might

occur.   Its legal and equitable effect and object were to recognize the change of ownership, legal or equitable, of the assured property, in such form and with such force as should continue the policy as a valid instrument, notwithstanding, and subject to,the change in ownership of the property and in the relations of the parties to it, and toward the policy.   The purpose was to keep alive the insurance in full force and effect for the benefit of Lockwood as mortgagee, and Nichols, the new purchaser, notwithstanding the changes made in the ownership of the property.

This new consent was procured by Lockwood and delivered to him ; its purpose was to have Nichols substituted, as owner of the property and of the policy,for Smith, and to maintain in full vigor the rights of Lockwood as mortgagee, entitled to receive the proceeds in case of loss, and whatever stood in the way of those objects was to be modified or removed, so that the intended purpose would be accomplished.   No deception was practiced to mislead or deceive the defendant,on the part of either of the persons concerned.

It has already been shown that Nichols had previously applied and taken out a policy in another company for the sum of $3,500, before he became the owner of the defendant's policy with its consent, or had any legal right therein as the insured in law or equity. This act could not avoid the policy of defendant of which Smith had been, by the company's consent, made owner, with loss, if any, payable to Lockwood.

The act of Smith in contracting to sell to Nichols the insured property did not, and could not, operate to make Nichols the insured. He held the property only by contract of sale and purchase to be consummated by subsequent conveyance, and the indorsement of the company recognizing him as owner of the property and policy is satisfied by his equitable relation and ownership, since the sole purpose was to keep in life and vigor the right of Lockwood to receive as mortgagee the proceeds of any loss.

If the indorsement on the policy did not have that effect it had none, but left Lockwood's rights under the first indorsement in full force, unimpaired by any act Nichols had done, either in taking out the policy in the Liverpool Company or in making the contract of purchase and sale.

There was, therefore, no such breach of conditions of the policy,

either by Lockwood or Smith or Nichols, as justified the defendant in refusing to pay the loss.

Another defense strenuously urged is that the proofs of loss were not served on defendant by the proper party. The policy requires such proof to be served by the insured within a prescribed period.

In due season the proofs of loss were served by Nichols. These proofs were kept and retained without objection that they were not served by the proper party, or were not proper in form or substance.

Under the circumstances of this case, I feel bound to hold that the defendant is estopped by receiving and keeping these proofs from Nichols, in the manner and form shown, from asserting that they were not served by the proper party, or that Nichols did not occupy a relation to the company which entitled him to make whatever service of proofs of loss were requisite to give his claim a standing in court under the policy. The company by its own act had put Nichols in a position where his equitable rights were, in my opinion, such as entitled him to serve the proofs.

So far as affects this question, the company had made Nichols "the insured" when they recognized him as "owner of the policy and property," the loss, if any, to be paid upon the obligation to Lockwood which he had assumed and which was a lien on the insured property.

Nichols was also the assignee of all the rights of Lockwood to recover in this action, and may, as such assignee, assert all those rights. His own rights were so connected with those of Lockwood that his action, in making and serving proofs of loss under the circumstances, Lockwood could assert, under the consent of the company indorsed on the policy, as a basis of his own right to collect the loss. Under such circumstances, the company is estopped from asserting that the proofs, etc., were not served or made by a proper person. If they had been refused or returned in proper season on any ground of that kind, they could have been renewed by another party also in interest.

If these views be right, the defense wholly fails in respect to the several questions discussed.

It is insisted, however, that there was a fraudulent overvaluation of the loss sustained in the claim presented.

This is a question of fact upon the evidence. I am of opinion

that such alleged fraud is not proven.   The assured procured a valuation by competent persons, whose testimony shows that it was made in good faith.   My finding upon the evidence must be against the alleged fraud.

The only remaining question is the amount plaintiff is entitled to recover.

This question depends upon one already considered, to wit, whether the policy taken by Nichols in the Liverpool, etc., Company was upon the same interest insured to Lockwood.   In its bearing upon another question that point has already been considered. His policy was upon a different interest, and it seems clear that the company could not compel Lockwood, had he been plaintiff suing as mortgagee, to apportion his claim by any policy Nichols had taken in another company upon the interest he had acquired in the property.

Nor do I think that Nichols on becoming, with the consent of the company, the owner of the policy issued to Lockwood, subject to Lockwood's claim to receive any loss thereon, as mortgagee, subjected that policy to diminution under the clause relied upon. That was not the intention of any of the parties, and is not the necessary effect or construction of their acts.

The plaintiff is assignee of Lockwood's interests as well as of those of Nichols in the Lockwood policy.   He is entitled to recover the full amount, to wit, $6,000 and interest, amounting in all to $6,510, with costs.   Judgment is directed accordingly.